UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

KENNETH ALLEN O.,                                                   Case No. 3:20-cv-01588-AC

                              Plaintiff,                                    OPINION AND ORDER

        v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                              Defendant.

_____

ACOSTA, Magistrate Judge:

        Plaintiff Kenneth Allen O.[1]  seeks judicial review of the final decision of the Commissioner

of Social Security denying his application for Title XVI Supplemental Security Income under the

Social Security Act, 42 U.S.C. §§ 1381 – 1383.   This Court has jurisdiction pursuant to 42 U.S.C.

§§ 405(g), and 1383(c).   All parties have consented to allow a Magistrate Judge enter final orders

_____

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the
last name of the non-governmental party in this case.

Page  1   – OPINION AND ORDER

and judgment in this case in accordance with 28 U.S.C. § 636(c).   For the following reasons, the

Commissioner's decision is affirmed.

*Procedural Background*

On March 5, 2018, Plaintiff protectively filed an application for supplemental security

income, alleging disability beginning January 1, 2013, due to bipolar disorder, spina bifida, post-

traumatic stress disorder ("PTSD"), developmental dysplasia of the hip, depression, anxiety, sleep

apnea, and suicidal ideation.   Tr. Soc. Sec. Admin. R. ("Tr.") 159, 300, ECF No. 12.   Plaintiff's

claims were denied initially and upon reconsideration.   Plaintiff filed a request for a hearing

before an administrative law judge ("ALJ").   The ALJ held a hearing on September 24, 2019, at

which Plaintiff appeared with his attorney and testified.   Tr. 36.   At the hearing, Plaintiff

amended his alleged onset date to March 5, 2018.   Tr. 38-39.   Vocational Expert Hahnet Livna

also appeared and testified.   Tr. 52.   On October 15, 2019, the ALJ issued an unfavorable

decision.   Tr. 15-28.   The Appeals Council denied Plaintiff's request for review and the ALJ's

decision became the final decision of the Commissioner for purposes of review.[2]   Tr. 1.

Plaintiff was born in 1979, was thirty-eight years old on the amended alleged onset of

disability, and was forty years old on the date of the ALJ's decision.   Tr. 38, 40, 54, 59.   Plaintiff

completed high school and some college, and has no past relevant work.   Tr. 41, 53-54.

\ \ \ \ \

---

[2] The Commissioner issued a previous unfavorable decision on December 22, 2011.   Tr. 15, 109.
In the October 2019 decision, the ALJ determined that Plaintiff rebutted the presumption of
continuing nondisability due to his changed circumstances, including a change in the mental
listings and an increase in the severity of his impairments.   Tr. 15, 165; *see also Chavez v. Bowen,
844 F.2d 691, 693 (9th Cir. 1988)* (providing for presumption of continuing disability unless
rebutted by the claimant).   Plaintiff does not challenge this portion of the ALJ's October 2019
decision.

*ALJ's Decision*

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful employment since March 5, 2018, the application date.   Tr. 17.   At step two, the ALJ determined that Plaintiff has the following severe impairments:   obesity, history of spina bifida with lumbar degenerative disc disease and T2 compression deformity, bipolar disorder, depression, and PTSD.   Tr. 18.   At step three, the ALJ determined that Plaintiff's severe impairments do not meet or equal the severity of any listed impairment.   Tr. 18.   Reviewing all the evidence in the record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work, except that he is limited to no more than frequent stooping, crouching, crawling, kneeling, or climbing of ramps and stairs; no more than occasional climbing of ropes, ladders, or scaffolds; no more than occasional contact with co-workers and the general public; and no work in close cooperation or coordination with others.   Tr. 20.   At step four, the ALJ found that Plaintiff has no past relevant work.   Tr. 27.   At step five, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform, including such representative occupations as a document preparer.   Tr. 28.   Therefore, the ALJ found that Plaintiff has not been disabled since March 5, 2018, through the date of the decision and denied Plaintiff's application for disability benefits. Tr. 28.

*Issues on Review*

Plaintiff contends the ALJ made the following errors:   (1) failed to properly evaluate his subjective symptom testimony; (2) failed to correctly assess the lay testimony of his spouse; (3) failed to properly evaluate the opinion of physician Lan Ban, M.D.; and (4) the RFC failed to account for all of the medical findings, resulting in an error at step four.   The Commissioner

argues that the ALJ's decision is supported by substantial evidence and is free of harmful legal error.

*Standard of Review*

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lambert v. Saul*, 980 F.3d 1266, 1270 (9th Cir. 2020); *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation and citation omitted); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020); *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Trevizo*, 871 F.3d at 675; *Garrison*, 759 F.3d at 1009. "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

*Discussion*

I.    The ALJ Did Not Err in Evaluating Plaintiff's Subjective Symptom Testimony

    *A.    Standards*

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. *Trevizo*, 871 F.3d at 678; 20 C.F.R. § 404.1529. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that reasonably could be expected to produce the symptoms

Page 4  – OPINION AND ORDER

alleged. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090; 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).    At the second stage, absent affirmative evidence that the claimant is malingering, the ALJ must provide specific, clear, and convincing reasons for discounting the claimant's testimony regarding the severity of the symptoms. *Lambert*, 980 F.3d at 1277; *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008).    The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015).    Factors the ALJ may consider when making such credibility determinations include conflicting objective medical evidence, effective medical treatment, the claimant's daily activities, and inconsistencies in testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2013); *Tommasetti*, 533 F.3d at 1039.

      *B.    Analysis*

At the hearing, Plaintiff testified that he suffers from severe back problems, that he "can't walk," has gained weight, is unable to put on his own shoes, is unable to clean himself after using the bathroom, and has numbness and becomes incontinent if he sits for prolonged periods.    Tr. 41.    Plaintiff testified that he attended art school three-quarters time for four years, but did not obtain an art degree.    Tr. 41.    Plaintiff stated that he attended one class per day, two days per week, plus one day per week online.    Tr. 42.    Plaintiff testified that he had accommodations for art school that included a note-taker, extended deadlines, and a special chair.    Tr. 48.

Plaintiff testified that his back problems aggravate his mental problems.    Tr. 42.    Plaintiff stated that he sees his mental health therapist once every two weeks and that she comes to his home.    Tr. 42.    Plaintiff testified that his therapist comes to the house to make sure that he is not

having any thoughts of self-harm and to ensure a safety plan is in place.   Tr. 50.   Plaintiff stated

that his mental health is so poor sometimes he does not leave the house or shower.   Tr. 43.

Plaintiff testified that his doctors recommended back surgery and that he needs to lose

weight prior to obtaining surgery.   Tr. 42.   Plaintiff stated he performs physical therapy exercises

at home, but that the exercises are not helpful.   Tr. 43.   Plaintiff estimated that he can be on his

feet for ten-to-fifteen minutes before needing to rest and can sit for forty-five or sixty minutes

before needing to change position.   Tr. 47.   Plaintiff stated he cannot work for eight hours a day

even if permitted to move around every hour because getting up and down aggravates his back,

and he is unable to clean his backside after using the toilet.   Tr. 51.

Plaintiff lives in an apartment with his wife and one-year-old daughter.   Tr. 43.   Plaintiff

testified that while his wife is working, his sister-in-law takes care of his daughter.   Tr. 43-44.

Plaintiff testified that while his wife is working, he just "stare[s] off at nothing because I can't

even focus on things" and that "[s]ome days I do chores."   Tr. 44.   Plaintiff denied engaging in

any hobbies, such as reading, playing guitar, painting, writing poetry, and drawing.   Tr. 44.

Plaintiff testified that he no longer reads books because he is unable to use public transportation

to get to the library.   Tr. 44.   Plaintiff stated that the bus stop is far from his home and that he

will be tired for three days if he uses the bus.   Tr. 45, 46.   Plaintiff further stated that after his

wife became pregnant, they no longer go to the movies.   Tr. 45.   Plaintiff also testified that riding

on the bus is painful, causing him numbness and back pain that radiates down his legs.   Tr. 46.

\ \ \ \ \

In a May 1, 2018 Adult Function Report, Plaintiff reported that he suffers from severe

depression and suicidal ideation.   Tr. 314.   Plaintiff stated that he does not get along well with

co-workers, which leads to issues on the job.   Tr. 314.   Plaintiff reported that he has severe manic

episodes with hallucinations where he does not sleep for days.   Tr. 314.   Plaintiff reported having

difficulty walking, and pain with sitting and standing due to his spina bifida.   Tr. 314.   Plaintiff

complained of having night terrors from his PTSD.   Tr. 314.   Plaintiff stated that he spends up to

an hour and a half each day doing light chores, such as cooking and walking the dog.   Tr. 315-17.

Plaintiff noted his wife reminds him to take medication.   Tr. 315.   Plaintiff said that he goes

grocery shopping twice per month with his wife and uses an electric cart.   Tr. 317.

Plaintiff stated that he likes to read monster mysteries and fantasy books, he writes poetry

and songs, he plays guitar, does wood carving, and paints.   Tr. 318.   Plaintiff described having

few friends and a poor relationship with his family.   Tr. 319.   Plaintiff stated that his impairments

limit his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks,

concentrate, understand, use his hands, and get along with others.   Tr. 319.   He further stated that

he has difficulty paying attention and with authority figures, and he becomes easily overwhelmed.

Tr. 319-20.   Plaintiff noted he uses a cane and that his prescription Seroquel causes cognitive

slowing.   Tr. 320.

In this case, there is no evidence of malingering and the ALJ determined that Plaintiff

provided objective medical evidence of underlying impairments which could reasonably produce

the alleged symptoms.   Tr. 21.   Thus, the ALJ was required to provide specific, clear, and

convincing reasons for discounting Plaintiff's subjective symptom testimony.   *See Ghanim*, 763

F.3d at 1163.   The Ninth Circuit recently clarified that an ALJ need not "perform a line-by-line

exegesis of the claimant's testimony," or "draft dissertations when denying benefits."   *Lambert,*

*980 F.3d at 1277.*   However, the ALJ must identify "which testimony [he] found not credible, and

. . . explain[ ] which evidence contradicted that testimony," and may not offer non-specific

conclusions.   *Id.* (simplified).   The ALJ readily met that standard here.

Page 7  – OPINION AND ORDER

First, the ALJ found Plaintiff's claim of totally debilitating impairments inconsistent with his level of functioning and his reported activities.    An ALJ may properly discount a claimant's subjective symptom testimony where inconsistent with daily activities that "'contradict claims of a totally debilitating impairment.'"    *Cindy F. v. Berryhill*, 367 F. Supp. 3d 1195, 1211-12 (D. Or. 2019) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012)).    An ALJ also may discount a claimant's testimony citing activities that are incompatible with a claimant's testimony regarding the severity of symptoms.    *Ghanim*, 763 F.3d at 1165 ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination.").    Here, the ALJ detailed numerous inconsistencies between Plaintiff's allegations and hearing testimony and his reports to various treatment providers.    Tr. 21.

For example, the ALJ observed that at the September 2019 hearing, Plaintiff testified he lives in an apartment with his wife and one-year-old daughter, and that he has no childcare responsibilities while his wife is working because his sister-in-law cares for their child.    Tr. 24, 43-44.    The ALJ also noted that Plaintiff testified that he stares off at nothing while his wife works, and occasionally performs chores.    Tr. 24, 44.    The ALJ discussed Plaintiff's hearing testimony that he does a few chores and draws on occasion.    Tr. 24, 44.    The ALJ noted that at the hearing, Plaintiff denied going to the movies, reading, going the library, and other than watching television, denied doing anything online.    Tr. 24, 44-45.    The ALJ found Plaintiff's report of his daily activities in stark contrast with Plaintiff's report to other providers, including that Plaintiff attended school for four years and would graduate with honors, and that Plaintiff regularly engaged in gardening, cooking, walking the dog, and caring for his infant daughter.    Tr. 24.    Additionally, the ALJ pointed out that in July 2018, Plaintiff reported to Dr. Nguyen that his mood was currently stable, denied suicidal ideation, and was attending art school and would be

Page 8  – OPINION AND ORDER

graduating in August with an associate's degree.   Tr. 23, 874-75.   The ALJ also detailed that in

May 2019, Plaintiff reported to a mental health provider that he was spending a lot of time doing

artwork and was paid for a logo he designed, and that he obtained business through his Instagram

account.   Tr. 23, 1314.   The ALJ further detailed several instances of Plaintiff reporting that he

cares for his infant daughter in direct contradiction of his testimony that such care is provided by

his sister-in-law.   Tr. 24, 1316, 1397.   Based on these specific inconsistencies, the ALJ

reasonably could conclude that Plaintiff's testimony was undermined by his contemporaneous

reports of his activities to other providers, and thus reasonably discounted Plaintiff's subjective

symptom testimony on this basis.   *Molina*, 674 F.3d at 1113; *see also Brown-Hunter*, 806 F.3d at

494 (explaining that ALJ must link claimant's testimony to specific evidence in the record to

support adverse subjective symptom determination).

Second, the ALJ discounted Plaintiff's subject symptom testimony based on the lack of

treatment and on Plaintiff's performance during physical examinations.   Tr. 22.   Inconsistencies

between a claimant's allegations and the objective medical evidence can provide a clear and

convincing reason for discounting a claimant's testimony.   *See Molina*, 674 F.3d at 1113-14

(explaining that ALJ may discount symptom testimony based on unexplained or inadequately

explained failure to seek treatment); *see also Kelly B. v. Saul*, Case No. 3:18-cv-01450-SB, 2019

WL 5680393, at *4 (D. Or. Nov. 1, 2019) (holding that the ALJ provided clear and convincing

reasons for discounting the claimant's symptom testimony because it was inconsistent with

objective medical evidence showing largely unremarkable physical examinations).

The ALJ noted several inconsistencies between Plaintiff's allegations and the medical

evidence.   The ALJ discussed that following the amended onset date of March 5, 2018, there is

little evidence of treatment.   Tr. 22.   The ALJ noted that during a May 2018 sleep study, Plaintiff

Page 9  – OPINION AND ORDER

walked with a normal gait, had normal strength in his upper and lower extremities, with full range

of motion, and no swelling or deformities, which was inconsistent with a May 2018 Function

Report, where Plaintiff alleged severe mobility issues.    Tr. 22, 314, 881.    The ALJ also discussed

a July 2018 treatment note from Khoi Nguyen, D. O., where Plaintiff reported nine of ten back

pain, and limited range of motion in his left shoulder.    Tr. 22.    The ALJ noted Dr. Nguyen's exam

findings that Plaintiff presented in no distress despite complaints of severe pain, and that his back

pain had been ongoing most of his life due to spina bifida, and that Dr. Nguyen recommended

weight loss and exercise.    Tr. 22, 876.    The ALJ found Plaintiff's allegations of total disability

inconsistent with Dr. Nguyen's relatively unremarkable assessment.    Tr. 22.

The ALJ discussed that in November 2018, an MRI of Plaintiff's lumbar spine showed

severe bilateral L5-S1 neural foraminal narrowing with impingement of the exiting L5 nerve roots

and chronic anterior wedge compression deformity of T12.    Ex. 22, 907.    The ALJ discussed that

in January 2019, Plaintiff met with Vivek Deshmukh, M.D., for his worsening back and right lower

extremity pain.    Tr. 22, 909.    As the ALJ discussed, despite Plaintiff's allegations of severe back

pain, examination findings were fairly unremarkable:    Plaintiff was able to move to the

examination couch without difficulty; gait and stance were normal; his upper and lower extremity

strength was five of five; cervical and lumbar range of motion was normal; straight leg tests were

negative; he could heel-and-toe walk without difficulty; and pinprick, vibration, and

proprioception examination were normal.    Tr. 22, 910.    Dr. Deshmukh recommended surgery,

but Plaintiff's surgical risk was too high given his morbid obesity.    Tr. 22, 910.    Dr. Deshmukh

recommended physical therapy and weight loss.    Tr. 911.    Although Plaintiff's November 2018

Lumbar MRI show fairly severe objective medical findings, the ALJ reasonably could conclude

based on Dr. Deshmukh's largely unremarkable findings that Plaintiff's low back pain was not as severe as alleged, and thus discounted his symptom testimony on this basis.

Plaintiff argues that the ALJ erred in finding his gait normal, because the record shows that Plaintiff use a cane for ambulating.  Plaintiff's contention is misplaced.  Although the record shows that Plaintiff has used a cane, the records cited by Plaintiff predate the amended alleged onset date.  *See* Pl.'s Br. 7 (citing 320, 374, 393, 400, 408, 412, 415, 451).  More importantly, the records cited by the ALJ asserting that Plaintiff walked with a normal gait do not reveal that Plaintiff used a cane or otherwise had an antalgic gate; rather, the records cited by the ALJ show no difficulty ambulating.  Tr.22, 881, 874-77, 909-11.  Thus, the ALJ's finding is supported by substantial evidence.  Even if the record could support Plaintiff's contrary interpretation, the court may not engage in second-guessing.  *Molina*, 674 F.3d at 1111 (providing that if evidence is susceptible to more than one rational interpretation, ALJ's findings must be upheld if supported by reasonable inferences); *Tommasetti*, 533 F.3d at 1038-39 (stating that if ALJ's conclusion supported by substantial evidence, court may not engage in second-guessing).

The ALJ further detailed numerous inconsistencies between Plaintiff's allegations concerning his mental health and his contemporaneous reports to other providers.  Tr. 22, 24. The ALJ discussed that in May 2018, Plaintiff alleged severe depression and suicidal ideation, yet he repeatedly denied suicidal ideation with his mental health providers.  Tr. 24, 1218-19, 1234, 1245, 1251, 1259, 1279, 1285, 1300, 1368, 1374, 1380, 1386, 1395.  Further, the ALJ detailed that contrary to Plaintiff's allegations of severe depression, he reported that he was engaging in art, gardening, cooking, and walking his dog to cope with his depression and stress.  Tr. 24, 1235-36, 1245, 1253, 1256, 1275, 1296, 1326, 1361, 1375, 1382.  And, the ALJ noted that in contrast to Plaintiff's allegations of severe manic episodes, Plaintiff reported to Dr. Ban that he was "doing

Page 11  – OPINION AND ORDER

well on Seroquel" and his night terrors were controlled with medication.   Tr. 23, 1405.   The ALJ noted Plaintiff reported similar increased stability on Seroquel to his mental health providers.   Tr. 23, 1236, 1244, 1261, 1314, 1326.   Again, the ALJ findings are fully supported by substantial evidence in the record.   Thus, the ALJ reasonably could find that Plaintiff's mental health impairments were not as severe as alleged.   The court concludes that this rationale and the ALJ's first rationale combine to provide specific, clear, and convincing support for discounting Plaintiff's subjective symptom testimony.

Third, the ALJ discounted Plaintiff's subjective symptom testimony based on Plaintiff's poor work history, finding that Plaintiff has been "working minimally and sporadically well before the amended alleged disability onset date."   Tr. 24.   An ALJ may reject subjective symptom testimony based on a claimant's poor work history.   *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (finding ALJ appropriately discounted subjective symptom testimony where claimant's work history was spotty, with years of unemployment between jobs, and that claimant "has shown little propensity to work in her lifetime, which negatively affected her credibility regarding her inability to work").   Here, the ALJ found that Plaintiff's poor work and earnings history called into question whether his impairments are the cause of his continued unemployment.   Tr. 24. The ALJ's findings are fully supported by substantial evidence in the record and show that Plaintiff has no earnings from 2004 to 2010, and again from 2014 to 2018, with other years showing minimal earnings.   Tr. 24, 290-97.   Based on Plaintiff's poor work history, the ALJ reasonably could conclude that Plaintiff's impairments did not prevent him from working.   Thus, the ALJ's third rationale provides additional clear and convincing support for discounting Plaintiff's subjective symptom testimony.

In summary, the ALJ provided specific, clear, and convincing reasons supported by substantial evidence for discounting Plaintiff's testimony about his symptoms.  *See Lambert*, 980 F.3d at 1277.  The ALJ identified specific testimony he found not credible by citing specific record evidence undermining that testimony, thereby providing sufficient reasoning for the court to determine that the ALJ did not arbitrarily discount Plaintiff's testimony.  *Id.* at 1278; *cf. Brown-Hunter*, 806 F.3d at 494 ("Because the ALJ failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination.  This was legal error.")  The ALJ did not err in assessing Plaintiff's subjective symptom testimony.

## II.    The ALJ Did Not Commit Harmful Error Regarding Lay Testimony

Lay witness testimony regarding a claimant's symptoms is competent evidence the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).   An ALJ is not required, "to discuss every witness's testimony on a[n] individualized, witness-by-witness basis.  Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114.  For claims filed on or after March 27, 2017, the new regulations provide that the ALJs are "not required to articulate how [they] considered evidence from nonmedical sources," but the amended regulations "do not eliminate the need for the ALJ to articulate his assessment of the lay-witness statements." *Tanya L. L. v. Comm'r Soc. Sec. Admin.*, 526 F. Supp. 3d 858, 869 (D. Or. 2021) (citing 20 C.F.R. §§ 404.1520c(d); 416.920c(d)).

Plaintiff argues the ALJ erred in failing to consider the lay witness statements of his spouse, Maria P.[3]  Pl.'s Br. at 11; *see also* Tr. 322-29, 374.   The Commissioner concedes that the ALJ erred in failing to discuss Maria P.'s testimony.   Def.'s Br. at 9-10.   Nevertheless, the court concludes any error is harmless because the lay testimony mirrors the limitations described by Plaintiff.  *Molina*, 674 F.3d at 1117.   For example, Maria P. stated that Plaintiff needs help bathing, showering, and putting on his socks and shoes, and has many physical limitations.   Tr. 322-23.   She also stated that Plaintiff's bipolar disorder causes mania and paranoia, causing visual and auditory hallucinations, and he frequently suffers from suicidal ideation.   Tr. 374.

As explained above, the ALJ provided specific, clear, and convincing reasons for discounting Plaintiff's substantially similar subjective symptom testimony by citing numerous contradictions between Plaintiff's testimony about his daily activities and his reports to medical providers and the lack of objective medical findings supporting the severity of his allegations. "Where the ALJ has provided clear and convincing reasons for rejecting the claimant's symptom testimony, and the lay witness has not described limitations beyond those alleged by the claimant, the ALJ's failure to provide germane reasons for rejecting lay testimony is harmless."   *Keri C. v. Comm'r Soc. Sec. Admin.*, Case No. 3:17-cv-01368-AA, 2018 WL 4909904, at *7 (D. Or. Oct. 10, 2018); *Molina*, 674 F.3d at 1122 (noting ALJ validly discounted claimant's testimony based in part on daily activities which applied to similar lay witness testimony); *Whitten v. Colvin*, 642 F. App'x 710, 713 (9th Cir. 2016) ("The ALJ [ ] gave germane reasons for giving little weight to the lay witness testimony . . . because their statements described essentially the same limitations as [claimant]'s own testimony.").   Therefore, the court confidently concludes that the ALJ's failure

---

[3] To protect privacy, the court uses only the first name and initial of the last name of Plaintiff's spouse.

to discuss the lay testimony was "inconsequential to the ultimate nondisability determination." *Id.*; *accord June K. v. Saul*, 6:19-cv-1548-SI, 2021 WL 2179262, at *8 (D. Or. May 28, 2021) (holding ALJ did not err in improperly rejecting lay testimony because "lay witness testimony did not describe any limitations not also described by Plaintiff"); *see also Jessi T.*, 6:20-cv-01365-YY, 2022 WL 19204, at *8 (D. Or. Jan. 3, 2022) (holding that even if ALJ was required to discuss lay testimony under new regulations, the ALJ's failure to do so was harmless because it described similar limitations by claimant and was appropriately discounted).

III.    The ALJ Reasonably Evaluated Dr. Ban's Opinion

Plaintiff filed his application for benefits March 5, 2018.  For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 416.920c governs how an ALJ evaluates medical opinion evidence under Title XVI.  *Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules")*, 82 Fed. Reg. 5844, *available at* 2017 WL 168819 (Jan. 18, 2017); *Tanya L. L.*, 526 F. Supp. 3d at 866 (recognizing that new regulations apply).  The new regulations provide that the ALJ no longer "weighs" medical opinions, but rather determines which are most "persuasive."  20 C.F.R. § 416.920c(a)-(b).  The ALJ evaluates the persuasiveness of all medical opinions based on:  (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."  20 C.F.R. § 416.920c(a), (c)(1)-(5).  "Supportability" and "consistency" are "the most important factors" in the evaluation process.  20 C.F.R. § 416.920c(c); *Jessica S. v. Comm'r Soc. Sec. Admin.*, Case No. 6:20-cv-01073-YY, 2021 WL 6144186, at *5 (D. Or. Dec. 31, 2021).

The new regulations require ALJ's to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. §§ 404.1520c(b); 416.920c(b); *Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020).    ALJ's are not required to explain how they considered the secondary factors unless they find that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical.    *Tyrone*, 2020 WL 6363839, at *6 (citing 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3)).    Finally, the court must consider whether the ALJ's analysis is supported by substantial evidence.    *See Tyrone*, 2020 WL 6363839, at *6; 42 U.S.C. § 405(g).

Plaintiff argues that the ALJ erred in failing to provide clear and convincing reasons for discounting the opinion of treating physician Dr. Ban.    Pl.'s Br. at 9-10, ECF No. 13.    The Commissioner responds that the ALJ's evaluation of Dr. Ban's opinion is governed by the new regulations and that his opinion is not entitled to any particular "weight."    Def.'s Br. at 10-13, ECF No. 16.    Plaintiff did not file a reply or otherwise respond to the Commissioner's argument. The Commissioner is correct; the court considers whether the ALJ adequately addressed the persuasiveness, including the supportability and consistency, of Dr. Ban's opinion.

In a letter dated April 12, 2019, Dr. Ban opined that Plaintiff "is unable to work with jobs that involve[] standing or walking.    He would also be unable to work with prolonged sitting due to back pain pending surgery."    Tr. 26, 901.    In addition to thoroughly discussing Dr. Ban's treatment notes elsewhere in the decision, the ALJ specifically discussed his rationale for finding Dr. Ban's April 2019 opinion not persuasive.    Tr. 26.    The ALJ noted Dr. Ban's opinion was not supported by any specific objective medical findings and was inconsistent with the record as a whole.    Tr. 26.    The ALJ's findings are supported by substantial evidence and are a reasonable

Page 16  – OPINION AND ORDER

interpretation of the record.   The ALJ reasonably could conclude that Dr. Ban's three treatment notes do not provide objective medical findings to support the severity of limitations described in Dr. Ban's letter.   See Tr. At 22-23 (describing March 2019 normal musculoskeletal range of motion and normal muscle tone, working on weight loss, and studying art); and Tr. 23 (describing April 2019 treatment note reflecting Plaintiff lost seventeen pounds from "ambulating and being active").

The ALJ thoroughly discussed the other record evidence inconsistent with Dr. Ban's opinion.   For example, the ALJ the November 2018 lumber MRI revealing severe disc degeneration at L5-S1 and recommending surgery.   Tr. 26.   The ALJ detailed that despite the fairly severe November 2018 MRI findings, the results of Dr. Deshmukh's physical examination were unremarkable, with normal gait, normal strength, negative straight leg raises, normal range of motion, normal lumbar range of motion, and that Plaintiff moved from the couch to the examination table without difficulty.   Tr. 25-26.   The ALJ noted that Dr. Ban's opinion that Plaintiff "cannot engage in any standing or walking" was inconsistent with other activities in the record, such as preparing meals, doing light housework, gardening, caring for his infant daughter, and attending community college classes.   Tr. 26.   The ALJ found that Dr. Ban's opinion inconsistent with Plaintiff's own report to him that he had been doing well and had lost weight from "ambulating and being active."   Tr. 26, 1413.   The ALJ further detailed that Dr. Ban's opinion that he could not engage in prolonged sitting inconsistent with Plaintiff's reported activities, such as attending classes, making art, and reading books.   Tr. 26.   Finally, the ALJ observed that the medical record did not reveal that Plaintiff consistently complained of pain with prolonged sitting.   Tr. 26.

Page 17  – OPINION AND ORDER

Although Plaintiff argues for a different interpretation of the record, the ALJ's findings are wholly supported by substantial evidence and are a reasonable interpretation of the evidence. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) (providing that when evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the reasonable interpretation of the ALJ).   Accordingly, the ALJ did not err in evaluating Dr. Ban's opinion.

III.    <u>The ALJ Considered All of Plaintiff's Credited Limitations in the RFC</u>

The RFC is the most a claimant can do despite his limitations.    20 C.F.R. § 404.1545(a)(1). The ALJ is required to include only those limitations that are supported by substantial evidence in the RFC and, by extension, hypothetical questions posed to the VE.    *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001); 20 C.F.R. § 404.1545(a) (discussing RFC).

\ \ \ \ \

Plaintiff argues that the ALJ failed to properly consider all of Plaintiff's documented limitations and include them in the RFC.   Plaintiff also makes a cursory argument that the ALJ erred in failing to properly consider the limiting effects of his obesity under Social Security Ruling 19-02p.   Plaintiff's argument in unavailing.   SSR 19-02p does not apply here because Plaintiff's SSI application was filed March 5, 2018, well before the effective date of SSR 19-02.   *See* SSR 19-02p, *available at* 2019 WL 2374244, at *1 (We will apply this notice on May 20, 2019); *Scott G. v. Comm'r Soc. Sec. Admin.*, Case No. 3:19-cv-00890-HL, 2021 WL 4777787, at *8 (D. Or. Oct. 13, 2021), *appeal filed* (9th Cir. Dec. 13, 2021).   Here, the ALJ considered Plaintiff's obesity a severe impairment at step two, considered it in combination with other impairments at step three, and considered the limitations of Plaintiff's obesity when addressing the RFC, ultimately accounting for those limitations by finding that he can perform work at the sedentary level.   Tr.

Page 18  – OPINION AND ORDER

27.   Furthermore, Plaintiff does not identify any specific credited functional limitations attributed to his obesity that the ALJ failed to consider.

Plaintiff's remaining arguments concerning the ALJ's RFC relate to limitations described by himself, his spouse, or Dr. Ban.   As discussed above, the court has determined that the ALJ has not committed any harmful legal errors in considering that evidence.   Consequently, the ALJ's RFC included all those limitations found credible and supported by substantial evidence, and the ALJ did not err in formulating the RFC.   *Osenbrock*, 240 F.3d at 1163-65; *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (holding where ALJ has not committed legal error and decision is supported by substantial error, the RFC contains all credited limitations); *Marina P. v. Comm'r Soc. Sec. Admin.*, Case No. 3:18-cv-00236-AC, 2019 WL 12360976, at *17 (D. Or. Sept. 27, 2019) (same).

### Conclusion

Based on the foregoing, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 1st day of February, 2022.

_____
JOHN V. ACOSTA
United States Magistrate Judge